Lars ROTH, Appellant,

v.

Mark C. WEIR, et al., Respondents,

Andrew J. Phillips, et al., Respondents,

Eldon J. Hall, et al., Respondents.

No. A04–885.

Court of Appeals of Minnesota.

Jan. 4, 2005.

William D. Paul, Duluth, MN, for appellant.

Mark C. Weir, Tower, MN, *pro se* respondent.

Andrew J. Phillips, Phillips & Newman, Ltd., Virginia, MN, *pro se* respondent.

William E. Defenbaugh, Jr., Ely, MN, for respondents.

Eldon J. Hall, Ely, MN, *pro se* respondent.

Considered and decided by
TOUSSAINT, Chief Judge;
SHUMAKER, Judge; and HALBROOKS, Judge.

**OPINION**

TOUSSAINT, Chief Judge.

On appeal from a summary judgment stating that appellant-covenantee failed to bring his action on a deed before the statute of limitations expired, covenantee argues that the district court erred in ruling that his cause of action accrued when the deed was delivered. Because covenantee brought his action within the statutory period after a third party successfully asserted an interest in the land contrary to covenantee's interest, we reverse and remand.

**FACTS**

In June 1990, Scott Newman sold various assets to Mark Weir, including a 1/3 interest in a building. Weir's obligations to pay Newman were secured by, among other things, a second mortgage on at least part of the building, naming Weir as mortgagor and Newman as mortgagee (Newman mortgage). The remaining 2/3 interest in the building was owned, 1/3 each, by Andrew Phillips and Eldon Hall. Weir, Phillips, and Hall sold the building to Lars Roth in October 1990 on a contract for deed with a one-year balloon payment. That contract for deed was later extended six months.

In January 1992, Weir wrote to Newman, stating that when Roth paid off his

contract for deed in April 1992, Weir would be required to produce a satisfaction of the Newman mortgage or a release. Weir asked whether Newman would provide a satisfaction or had other suggestions for clearing title. Newman responded, stating that he would provide a partial satisfaction, and encouraged Weir to use his portion of the proceeds of Roth's balloon payment to pay off the Newman mortgage. Roth paid off the contract for deed but did not get a deed for the building, Weir did not pay off the Newman mortgage, and Newman did not provide a satisfaction of the mortgage.

In April 1992, Weir made one year's worth of payments on the Newman mortgage, but did not make another payment until 1997.

In 1995, Roth sought to refinance certain debt by, among other things, mortgaging the building. In connection with Roth's attempted mortgage, Weir examined title for the building. The title-opinion process revealed, among other things, that Roth was not the record owner of the building. The opinion stated that the building was owned by Weir, Phillips, and Hall, was subject to, among other things, the contract for deed to Roth, first and second mortgages, and a 1995 notice of mortgage foreclosure. But the title opinion did not identify which mortgage was being foreclosed.

As a result of this information, in early 1996, Weir, Phillips, and Hall, and their wives, executed a warranty deed in favor of Roth for the building. The warranty deed stated that the property was unencumbered. Apparently, the deed was never physically presented to Roth, but the bank directed Weir to have the deed recorded. Weir then attempted to contact Roth to get his social security number and to obtain the recording fee. Roth did not respond, and on June 17, 1996 Weir sent the deed to the county. The county received it on June 21, 1996 and recorded it on June 27, 1996.

Newman later sought to foreclose his mortgage, seeking to do so by advertisement. In June 2001, Weir and Roth sued Newman in a declaratory judgment action, arguing that the foreclosure was defective. The district court later allowed Newman to amend his counterclaim to seek foreclosure by action. After trial, the court issued a June 13, 2001 ruling granting foreclosure by action, allowing a mortgage foreclosure sale of the property, and granting a deficiency judgment against Weir. On June 27, 2002, Roth sued Weir, Phillips, and Hall, and their wives, as the signatories of the 1996 deed. Weir argued that because the deed incorrectly stated that the land was unencumbered, the signatories breached the warranties in the warranty deed and committed fraud and misrepresentation. This case was assigned to the same judge who heard the declaratory judgment action.

On cross-motions for summary judgment, the district court ruled that (a) Roth's cause of action accrued when the defective deed was delivered; (b) the deed was delivered on or before June 21, 1996 when it was received by the county for recording purposes; and therefore (c) Roth's June 27, 2002 suit against Weir, Phillips, and Hall, and their spouses, was untimely under Minn.Stat. § 541.05, subd. 1 (2002). Roth appeals.

## ISSUES

1. May this court address Roth's argument that his suit is premature?

2. Did the district court correctly apply the statute of limitations?

## ANALYSIS

Actions brought on contracts or other obligations not addressed by a specific

statute of limitations, and actions on a liability created by statute, are subject to a six-year statute of limitations. Minn.Stat. § 541.05, subd. 1(1), (2) (2002). Here, the district court ruled that (1) Roth's cause of action accrued when the deed was delivered; (2) the deed was delivered on or before June 21, 1996 when it was received by the county to be recorded; and therefore (3) Roth's June 27, 2002 suit was untimely. On appeal from a summary judgment, appellate courts

> review whether there are any genuine issues of material fact and whether the district court erred in its application of the law. We view the evidence in the light most favorable to the party against whom summary judgment was granted. We review de novo whether a genuine issue of material fact exists. We also review de novo whether the district court erred in its application of the law.

*STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn.2002) (citations omitted).

### I.

Roth argues that the district court erred in ruling his suit to be untimely because his cause of action does not accrue until he has paid off the encumbrance, which he has not yet done. Thus, on appeal, Roth is essentially arguing that his own suit is premature. Respondents argue that Roth cannot argue to this court that his suit is premature because he did not make that argument in district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating parties generally allowed to raise neither new issues nor new theories on appeal).

Roth argues that the issue is properly before this court because Phillips and Hall raised it in district court. In a dispute involving riparian lands, the supreme court noted that "a party may not try his case

under a legal theory chosen by him, and, being unsuccessful therein, subsequently complain upon appeal here that such chosen theory was really not the correct one after all." *State v. Adams*, 251 Minn. 521, 549, 89 N.W.2d 661, 680 (1957). *Adams* is consistent with the general idea that a party cannot switch theories on appeal. *Thiele*, 425 N.W.2d at 582. Thus, while Phillips and Hall argued, in district court, that Roth's suit was premature, because Roth did not, he is switching theories on appeal and has not properly preserved the question for appeal.

Appellate courts have a limited ability to address issues not properly preserved for appeal. "[O]n rare occasions" appellate courts have exercised [their] discretion to allow a party to proceed on a theory not raised at trial." *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 390 (Minn.1992); *see* Minn. R. Civ.App. P. 103.04 (stating appellate courts "may" review "any" matter as "justice may require," but that the scope of review "may be affected by whether proper steps have been taken to preserve issues for review on appeal"). There is

> a "well-established" exception to the general rule [that a party may not raise an issue on appeal that the party did not preserve for appeal]:
>
> [A]n appellate court may base its decision upon a theory not presented to or considered by the trial court where the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits, and where, as in [cases] involving undisputed facts, there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question.
>
> Factors favoring review include: the issue is a novel legal issue of first impression; the issue was raised prominently

in briefing; the issue was "implicit in" or "closely akin to" the arguments below; and the issue is not dependent on any new or controverted facts.

*Watson v. United Servs. Auto. Ass'n,* 566 N.W.2d 683, 687–88 (Minn.1997) (citations and emphasis omitted). Here, because ruling that the action is not untimely would allow future litigation, the issue is not "decisive of the entire controversy on its merits." Also, case law addresses when the limitations period starts for breaches of a deed's covenant of seisin. *Brooks v. Mohl,* 104 Minn. 404, 406, 116 N.W. 931, 931 (1908). Therefore, the question is not "a novel issue of first impression." The issue, however, was raised prominently in the briefing to this court, and the district court's ruling that Roth's suit was untimely because he brought it more than six years after delivery of the deed shows that, "implicit in" the district court's ruling, is the idea that the limitations period began to run with the delivery of the deed. Finally, as discussed in Issue II below, application of the *Brooks* analysis regarding when the limitation period for a breach of the covenant of seisin begins to run "is not dependant on any new or controverted facts."

█ Of the *Watson* factors to be considered when deciding whether to exercise our limited discretion to address an issue not properly preserved for appeal, three weigh in favor of addressing the question. Additionally, because the question *was* raised in district court, albeit by Phillips and Hall, the appeal will not be the first time the question is presented for decision. Therefore, we will exercise our discretion to address that issue here. *Cf. State v. Hannuksela,* 452 N.W.2d 668, 673–74 n. 7 (Minn.1990) (addressing appellate court's responsibility to decide cases in accordance with existing law); *Greenbush State Bank v. Stephens,* 463 N.W.2d 303, 306 n. 1

(Minn.App.1990) (applying *Hannuksela* in a civil case), *review denied* (Minn. Feb. 4, 1991).

**II.**

Roth argues that his suit cannot be untimely because his cause of action does not accrue until he has satisfied the encumbrance or been otherwise damaged, which has not yet occurred. In *Brooks,* 104 Minn. at 405, 116 N.W. at 931, Mohls transferred certain land by warranty deed to Brooks, who occupied it until his death. After Brooks's death, his heirs occupied the land. *Id.* Thirteen years after the warranty deed, third parties started a partition action that resulted in the heirs of Brooks being ruled to own an undivided 9/15ths interest in the land, while each of three others was ruled to own an undivided 2/15ths interest in the land. *Id.* The heirs of Brooks then purchased the various interests in the land that they did not own and, 16 years after delivery of the deed, sued Mohls for breach of the covenants in the deed. *Id.* In rejecting the argument that the heirs' suit was untimely because it was brought more than six years after the deed was delivered, the supreme court stated:

> Undoubtedly, for some purposes, the covenant [of] seisin is regarded as broken by failure of title as soon as the deed is delivered; but for the present purposes that rule is not properly invoked. It is the settled law of this state, in conformity with the general opinion on the subject, that "if, at the date of the covenant, there is a superior title outstanding in a third person, whenever that title is actually asserted against the covenantee, the premises are claimed under it, and the covenantee is obliged to yield, and does yield, his claim to the superior title, the covenant is broken."

*Id.* at 406, 116 N.W. at 931 (citations omitted). The supreme court also stated that "[t]he judgment in the partition suit was a sufficient eviction to constitute a breach of covenant, and the purchase ... of the outstanding title by the covenantee, after resistance in good faith, in no [way] affected the sufficiency of the eviction." *Id.* Furthermore, "[t]he purchase [was] equivalent to an entry of the claimant." *Id.* To rule otherwise, the supreme court stated, would put the covenantee in a situation where "the covenantee, in unopposed possession for six years without notice of adverse claim of title, might be evicted and have no remedy against his grantor. His cause of action would be barred before he would know of its existence." *Id.* at 406, 116 N.W. at 931–32.

▆▆▆▆ Thus, because ruling that the limitations period starts when the defective deed is delivered could leave a covenantee with no remedy where the adverse interest is not asserted until more than six years after the delivery of the deed, the delivery of a defective deed is not sufficient to start the six-year limitations period. A third party's successful assertion of an interest in the property contrary to the interest of the covenantee, however, is sufficient to start the running of the limitations period. Here, Roth commenced his action within six years of Newman's successful mortgage-foreclosure proceeding. Thus, under *Brooks*, we conclude that Roth's action was not untimely, and we reverse the district court on that point. This holding is similar, but not identical, to that of *Soderberg v. Holt*, 86 Utah 485, 46

P.2d 428 (1935) where, after surveying cases from numerous jurisdictions, including Minnesota's *Brooks* decision, the Utah Supreme Court ruled that "a covenant against encumbrances is, in effect, a covenant to indemnify where the encumbrance is a charge or lien against the land which can be extinguished by payment" and that the limitations period "can be held to begin to run only when the grantee is damnified[ 1]." *Id.* at 433.

Because Roth's action is not untimely, we need not address the parties' disputes about when the deed was delivered.

## DECISION

While Roth did not properly preserve for appeal the question of whether his suit was premature, on this record, we will exercise our limited discretion to address that question. The delivery of a defective deed is not sufficient to start the limitations period, but the successful assertion of an interest in property contrary to the covenantee's interest is sufficient to start the running of the limitations period. Here, Roth's suit, brought within six years of the foreclosure of Newman's mortgage, was not untimely.

**Reversed and remanded.**

---

1. "damnify, *vb.* To cause loss or damage to; to injure <the surety was damnified by the judgment obtained against it>." *Black's Law Dictionary,* 397 (7th ed.1999).