*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0437**

Charles Smida, et al.,
Respondents,

vs.

Isanti Pines Tree Farm, LLC,
defendant and third party plaintiff,
Appellant,

vs.

John F. Vande Waa, et al.,
third party defendants,
Respondents,

Arthur J. Swanson,
third party defendant,
Respondent,

Julie A. Swanson,
third party defendant,
Respondent,

Registered Abstractors, Inc.,
third party defendant.

**Filed November 30, 2015
Affirmed
Klaphake, Judge[*]**

Isanti County District Court
File No. 30-CV-13-901

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

Thomas B. Olson, Katherine L. Wahlberg, Olson & Lucas, P.A., Edina, Minnesota (for respondents Smidas)

John G. Westrick, Westrick & McDowall-Nix, PLLP, St. Paul, Minnesota (for appellant)

Grant W. Lindberg, Lindberg Law Office, P.A., Cambridge, Minnesota (for respondents Vande Waas)

Arthur J. Swanson, Julie A. Swanson, Princeton, Minnesota (pro se respondents)

Considered and decided by Cleary, Chief Judge; Schellhas, Judge; and Klaphake, Judge.

## UNPUBLISHED OPINION

**KLAPHAKE**, Judge

Appellant Isanti Pines Tree Farm, LLC, (Isanti Pines) challenges the district court's summary judgment in favor of respondents Charles and Judith Smida (the Smidas), John and Diane Vande Waa (the Vande Waas), and Arthur and Julie Swanson (the Swansons), recognizing the Smidas' claim to an easement and dismissing its counterclaims and defenses. Isanti Pines argues that the district court erred by granting summary judgment on: (1) its breach of warranty and misrepresentation claims; (2) its claim of adverse possession; (3) its trespass claim; (4) its affirmative defense of equitable estoppel; and (5) its affirmative defense of abandonment. Isanti Pines also claims that the district court erred by denying its motion to compel discovery. We affirm.

## DECISION

On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in applying the law.

2

*Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). A genuine issue of material fact exists when there is sufficient evidence that could lead a rational trier of fact to find for the nonmoving party. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

## I.

The Vande Waas owned two adjacent parcels of land. In 1997, pursuant to a contract for deed, the Vande Waas sold the eastern parcel (the Isanti Pines property) to the Swansons. The contract for deed reserved "a non-exclusive easement for ingress, egress and utility purposes" over the Isanti Pines property (the easement) to allow access to the western parcel (the Smida property). The Vande Waas later delivered a warranty deed for the Isanti Pines property to the Swansons, again reserving the easement. In October of 1998, the Swansons conveyed the Isanti Pines property to LSM Companies LLC (LSM) by a warranty deed that did not mention the easement. The property was later conveyed to Isanti Pines, LSM's successor in interest. In 2012, the Vande Waas sold the Smida property to the Smidas.

Isanti Pines claims that by failing to include the easement in the warranty deed, the Swansons breached the covenants contained in the deed and intentionally misrepresented

3

that there would be no easement on the property.[1]  The district court dismissed these claims on statute of limitations grounds.  *See* Minn. Stat. § 541.05, subd. 1(1), (6) (2014) (providing a six-year statute of limitations for these claims).  The district court concluded that the statute of limitations began to run in 1998, when the Swansons delivered the warranty deed.  Isanti Pines argues that it did not begin to run until 2013, when the Smidas filed suit to establish their interest in the easement.

**Breach of Warranty**

Isanti Pines bases its argument on *Brooks v. Mohl*, in which our supreme court held that if, on the "date of the covenant, there is a superior title in a third person, whenever that title is actually asserted against the covenantee, and the premises are claimed under it, and the covenantee is obliged to yield and does yield his claim to the superior title, the covenant is broken."  104 Minn. 404, 406, 116 N.W. 931, 931 (1908) (quotations omitted).  Isanti Pines argues that it had no cause of action until the Smidas filed suit in 2013 because the covenants in the warranty deed were not yet broken and it had no damages.

But *Brooks* recognizes that "[u]ndoubtedly, for some purposes, the covenant for seisin is regarded as broken by failure of title as soon as the deed is delivered."  *Id.*; *see also Ethen v. Reed Masonry, Inc.*, 313 N.W.2d 19, 21 (Minn. 1981) (concluding that the convenants of seisin and right to convey are "breached, if at all, at the time of the

---

[1]  Minn. Stat. § 507.07 (2014) provides that every warranty deed contains implied covenants of seisin, right to convey, freedom from encumbrances, quiet enjoyment, and duty to defend.

execution of the deed"); *Callaway v. Seaton*, 156 Minn. 224, 227, 194 N.W. 622, 623 (1923) (stating that it is "settled law" that the covenants of the right to convey and of seisin "are broken immediately, if at all"); *Allen v. Allen*; 48 Minn. 462, 464, 51 N.W. 473, 473 (1892) ("[T]he covenant of [seisin] was broken upon the execution of defendants' deed, vesting in the plaintiff an immediate cause of action."); *Kimball v. Bryant*, 25 Minn. 496, 498 (1879) (stating that the covenant of seisin "is completely fulfilled or completely broken on the instant of its execution, and, if broken, vesting at once a right of action in the covenantee"). The covenants in the warranty deed were broken as soon as the Swansons delivered the deed to LSM. Because an easement is a permanent encumbrance on the property that cannot be removed absent the agreement of a third party, there were immediate damages in the amount that the easement diminished the value of the land. *See Mackey v. Harmon*, 34 Minn. 168, 172-73, 24 N.W. 702, 704 (1885) (holding that damages for an encumbrance that cannot be removed are "compensation for the depreciation in value of . . . land occasioned by the incumbrance")

The purpose of the alternative rule announced in *Brooks* is to avoid the situations where "the covenantee, in unopposed possession for six years without notice of adverse claim of title, might be evicted and have no remedy against his grantor." *Brooks*, 104 Minn. at 406, 116 N.W. at 931-32. Isanti Pines admits that Nathan Meinhardt, a principal of LSM and Isanti Pines, had notice of the easement's existence through a title search and conversations with the Swansons and Vande Waas at the time the deed was delivered.

The six-year statute of limitations began to run on Isanti Pines's breach of warranty claims in October of 1998. Isanti Pines did not file its claims against the

Swansons until 2014. Accordingly, we conclude that the district court did not err by granting summary judgment in favor of the Swansons and dismissing Isanti Pines's breach of warranty claims as untimely.

**Misrepresentation**

The statute of limitations on a fraud or misrepresentation action begins to run when the aggrieved party discovers the facts constituting fraud. Minn. Stat. § 541.05, subd. 1(6). Discovery of the fraud is judged under the "reasonable person standard." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 172 (Minn. 2012). "The facts constituting the fraud are deemed to have been discovered when they were actually discovered or, by reasonable diligence, should have been discovered." *Id.* (quotation omitted).

Again, Meinhardt was aware of the existence of the easement in 1998, when the deed was delivered. We conclude that the district court did not err by granting summary judgment in favor of the Swansons because Isanti Pines's misrepresentation claim is barred by the six-year statute of limitations.

**II.**

Isanti Pines next argues that the district court erred by dismissing its claim that the easement was eliminated by adverse possession. The district court granted summary judgment in favor of the Smidas because it found that Isanti Pines acknowledged the existence of the easement on multiple occasions prior to the Smidas' 2013 lawsuit. Isanti Pines agrees that acknowledgment of the easement would defeat its adverse possession claim, but argues that there is a fact question as to whether this occurred.

"To establish title by adverse possession, a disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the requisite period of time," which is fifteen years. *SSM Invs. v. Siemers*, 291 N.W.2d 383, 384 (Minn. 1980); Minn.Stat. § 541.02 (2014). "Failure to establish any one of the five essential[] [elements] is fatal to the validity of the claim." *Johnson v. Raddohl*, 226 Minn. 343, 345, 32 N.W.2d 860, 861 (1948). "Continuity is broken by an acknowledgement of the owner's title by the adverse possessor before the statute has run in his favor." *Stanard v. Urban*, 453 N.W.2d 733, 736 (Minn. App. 1990), *review denied* (Minn. June 15, 1990). An offer to buy the disputed property constitutes acknowledgement of the owner's title. *Id.*

The undisputed facts establish that Meinhardt, on behalf of Isanti Pines, acknowledged the Vande Waas' interest in the easement on several occasions. Meinhardt asked Jack Vande Waa to move the easement to a different part of the Isanti Pines property in a 1999 phone call. In the same phone call, Meinhardt attempted to purchase the Smida property. In a 2000 letter to Vande Waa, Meinhardt indicated that he only purchased the Isanti Pines property because he thought he could extinguish the easement by later buying the Smida property. In this letter, Meinhardt also recounted his 1999 attempt at "trading the easement on the North side of my property for an easement on the South side of my property." Meinhardt attempted to purchase the Smida Property again in 2006 and, as a bargaining tactic, listed the sale price of another "comparable[]" property "in close proximity with an easement to it."

7

Isanti Pines argues that there is a fact question as to whether Meinhardt acknowledged the existence of the easement because Meinhardt and his wife, Lauri Meinhardt, claim in affidavits that they never believed the easement was valid. But "self-serving affidavit[s] that contradict[] earlier damaging [statements of the party are] not sufficient to create a genuine issue of material fact." *Banbury v. Omnitrition Int'l., Inc.*, 533 N.W.2d 876, 881 (Minn. App. 1995). Meinhardt consistently behaved as if he believed the easement existed, and he cannot create a fact issue by claiming on the eve of summary judgment that he never thought the easement was valid.

Because Meinhardt acknowledged the Vande Waas' interest in the easement on multiple occasions within the 15-year period, Isanti Pines cannot establish the continuity necessary for adverse possession. Therefore, we conclude that the district court did not err by granting summary judgment against Isanti Pines on the issue of adverse possession.

### III.

Isanti Pines next argues that the district court erred by granting summary judgment to the Smidas on its trespass claim and denying its motion for summary judgment on this claim. Isanti Pines contends that the Smidas admit entering its property and posting "no trespassing" signs on the easement and that this constituted a trespass and entitles it to summary judgment.

Isanti Pines bases its trespass claim on Charles Smida's response to an interrogatory in which he admitted placing "No Trespassing" signs "in the middle of the easement about twenty yards off the east lot line." As Isanti Pines admits, this

8

interrogatory answer was filed on October 3, 2014. The summary judgment motion hearing was held prior to this on September 23, 2014. At the conclusion of the hearing, the district court stated, "[t]he Court will take the matter under advisement and issue a written opinion."

"[I]n order to successfully oppose a motion for summary judgment a party may not rely on general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial." *Dalco Corp. v. Dixon*, 338 N.W.2d 437, 440 (Minn. 1983) (quotation omitted). It is well established that the record on summary judgment does not remain open following a hearing even if judgment is not entered. *Id.*; *see also Am. Warehousing & Distrib., Inc. v. Michael Ede Mgmt., Inc.*, 414 N.W.2d 554, 557 (Minn. App. 1987) (upholding a district court's refusal to consider an affidavit submitted four days after a summary judgment hearing).

Absent this interrogatory answer, which was submitted after the record was closed, there is no evidence that the Smidas entered the property and erected "No Trespassing" signs. Furthermore, even if we consider the interrogatory response, the easement allowed the Smidas to enter the property, and an easement holder has a right and a duty to maintain an easement. *See St. Anthony Falls Water-Power Co. v. City of Minneapolis*, 41 Minn. 270, 274, 43 N.W. 56, 57 (1889) (stating that the grant of an easement includes an "implied grant" to do all things necessary to make the easement capable of enjoyment); *Matter v. Nelson*, 478 N.W.2d 211, 214 n. 1 (Minn. App. 1991) (noting dominant estate holder's liability for failure to repair or maintain an easement).

9

The Smidas' placement of "No Trespassing" signs on the easement would not constitute a trespass unless it interfered with Isanti Pines's right to possess and use the property. *See Wendinger v. Forst Farms, Inc.*, 662 N.W.2d 546, 550 (Minn. App. 2003), *review denied* (Minn. Aug. 5, 2003) (stating that the tort of trespass "encompasses any unlawful interference with one's person, property, or rights, and requires only two essential elements: a rightful possession in the plaintiff and unlawful entry upon such possession by the defendant") (quotation omitted). Meinhardt had also posted no trespassing signs on the easement. There is no evidence in the record that the Smidas' "No Trespassing" signs did anything other than keep out potential trespassers in the same manner as the signs posted by Meinhardt. Accordingly, we conclude that the district did not err by dismissing Isanti Pines's trespass claim.

## IV.

Isanti Pines claims that the Smidas are estopped from asserting a claim to the easement because by purchasing the Isanti Pines Property in 1998, LSM relied to its detriment on the Vande Waas' representation that they would eliminate the easement by selling the Smida Property to Meinhardt. The district court granted summary judgment for the Smidas because there was no allegation that the Smidas made any misrepresentations or participated in any wrongdoing. Isanti Pines argues that the Smidas were in privity with the Vande Waas and, therefore, can be estopped based on the misrepresentations of the Vande Waas.

Equitable estoppel is "intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." *Brown v. Minnesota*

10

*Dep't. of Pub. Welfare*, 368 N.W.2d 906, 910 (Minn. 1985) (quotation omitted). A party claiming equitable estoppel must establish:

> (1) conduct amounting to a representation or concealment of material facts that are (2) known to the party estopped and (3) unknown to the party claiming the benefit of the estoppel, and (4) the conduct is done with the intent or expectation that the party would act on it, and (5) the party does act on it (6) to his detriment.

*SN4, LLC v. Anchor Bank, FSB*, 848 N.W.2d 559, 569 (Minn. App. 2014), *review denied* (Minn. Sept. 16, 2014). "The application of equitable estoppel ordinarily presents a question of fact unless only one inference can be drawn from the facts." *Drake v. Reile's Transfer & Delivery, Inc.*, 613 N.W.2d 428, 434 (Minn. App. 2000).

Isanti Pines argues that *Lobnitz v. Fairchild* supports its claim that the Smidas can be estopped from asserting a claim to the easement based on the misrepresentations of the Vande Waas. 186 Minn. 215, 217, 243 N.W. 62, 63 (1932). In *Lobnitz*, the supreme court concluded that the grantees were bound by the statements of their grantors. *Id.* But when the *Lobnitz* grantees acquired title, they were explicitly told that they had no interest in the disputed property. *Id.* The Smidas' contract for deed and subsequent warranty deed reserve the easement, and there is no allegation that the Smidas were told that the easement was invalid or were in any way aware of the Vande Waas' alleged misrepresentations when they purchased the property.

Isanti Pines cannot estop the Smidas, who are not accused of any wrongdoing, from claiming an interest in the easement based on the alleged misrepresentations of the Vande Waas. *See Brown*, 368 N.W.2d at 910; *Bausman v. Faue*, 45 Minn. 412, 417, 48

11

N.W. 13, 15 (1891) ("The proposition that a party is estopped from asserting a right implies fault on his part. There can be no estoppel without some fault of the party estopped."). This is especially true given that Meinhardt was aware of the easement all along and was in a much better position than the Smidas to prevent any sort of fraud. *See Burgess v. Bragaw*, 49 Minn. 462, 468, 52 N.W.45, 46 (1892) ("[W]here one of two innocent persons must suffer from the fraudulent act of a third, he by whose act the third person was enabled to perpetrate the fraud must bear the loss."). We conclude that the district court did not err by granting summary judgment to the Smidas on Isanti Pines's affirmative defense of equitable estoppel.

## V.

Isanti Pines argues that the district court erred by granting summary judgment in favor of the Smidas because the Vande Waas abandoned the easement before the property was sold to the Smidas. The district court found that the Vande Waas "did not abandon the easement because they did not commit any acts or conduct that would have been clearly inconsistent with an intent to continue the use of the easement for the purposes for which it was acquired." Isanti Pines argues that Mr. Vande Waa told Meinhardt that he was never going to use the easement, and that this raises a fact question in regards to whether the easement was abandoned.

"A claim of abandonment can be upheld only where nonuse is accompanied by affirmative and unequivocal acts indicative of an intent to abandon and is inconsistent with the continued existence of the easement." *Richards Asphalt Co. v. Bunge Corp.*, 399 N.W.2d 188, 192 (Minn. App. 1987) (citation omitted). Whether an easement has

12

been abandoned is generally a question of fact. *Simms v. William Simms Hardware*, 216 Minn. 283, 293, 12 N.W.2d 783, 788 (1943).

According to a Meinhardt affidavit, "[i]n January of 1999 [he] phoned Mr. Vande Waa" and expressed "concern about the possible easement" on the Isanti Pines property. Mr. Vande Waa told him "not to worry as he was not going to develop the property or access [the Smida property] through [the Isanti Pines property]." Despite this conversation, Meinhardt asked the Vande Waas to move the easement from the northern to the southern part of the Isanti Pines property in a later phone call in 1999. Meinhardt also mentioned the easement in an April 2000 letter and a 2006 letter. In addition, the Vande Waas lawyer sent Meinhardt a letter in 2006 stating that the Vande Waas "use that easement from time to time" and "intend to use the easement in the future." The parties continued to act as if the easement existed after the January 1999 phone call. No one, including Meinhardt, understood Mr. Vande Waa's statement as an unequivocal act indicative of an intent to abandon.

Because there is no evidence in the record of "affirmative and unequivocal acts indicative of an intent to abandon," there is no genuine issue of material fact. *See Richards Asphalt Co.*, 399 N.W.2d at 192. Therefore, we conclude that the district court did not err by granting summary judgment for the Smidas on the issue of abandonment.

## VI.

Finally, Isanti Pines argues that the district court abused its discretion by denying Isanti Pines's motion to compel the Swansons to provide discovery disclosures pursuant to Minn. R. Civ. P. 26.01 and appear for depositions. The district court denied Isanti

13

Pines's motion because it was made after the discovery period specified in the court's scheduling order had closed, and the court found that allowing further discovery was not necessary to prevent a manifest injustice. Isanti Pines argues that the district court abused its discretion by denying the motion to compel because it provided the Swansons with notice of a deposition to take place before the end of the discovery period.

The district court has wide discretion to issue discovery orders and, absent a clear abuse of that discretion, its discovery orders will not be disturbed. *Underdahl v. Comm'r of Pub. Safety* (*In re Comm'r of Public Safety*), 735 N.W.2d 706, 711 (Minn. 2007). "We review a district court's order for an abuse of discretion by determining whether the district court made findings unsupported by the evidence or by improperly applying the law." *Id.*

A scheduling order "shall be modified only to prevent manifest injustice." Minn. R. Civ. P. 16.05. In determining whether to relieve a party of the obligations of a scheduling order, we apply a balancing approach, considering factors such as the degree of prejudice to the parties seeking and opposing modification; the impact of the modification; and the degree of willfulness, bad faith, or inexcusable neglect on the part of the party seeking modification. *Cotroneo v. Pilney*, 343 N.W.2d 645, 649 (Minn. 1984). "But even if the moving party was diligent in seeking discovery, when further discovery will not reveal material facts, the district court may deny the continuance motion." *QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 400 (Minn. App. 2010). "When summary judgment is involved, if the discovery would not assist the district court or change the result of the summary

14

judgment motion, the district court does not abuse its discretion by granting the summary judgment motion without granting the continuance." *Id.*

On May 29, 2014, the district court ordered that "discovery shall be completed in full on or before July 31, 2014." On August 13, 2014, Isanti Pines filed its motion to compel the Swansons to produce discovery. In the motion, Isanti Pines indicated that they provided the Swansons with notice to appear for depositions on July 30, 2014, but the Swansons were unable to attend the depositions. The district court denied Isanti Pines's motion to compel, finding that "Isanti Pines lacked the requisite diligence in obtaining discovery from [the Swansons] because Isanti Pines did not serve the Swansons with any written discovery[.]" In addition, Isanti Pines had already filed a summary judgement motion against the Swansons two weeks prior to filing the motion to compel. The district court, therefore, found that no "additional material facts would be produced should the motion be granted."

Isanti Pines did not exercise due diligence in seeking discovery from the Swansons, and, given that Isanti Pines's claims against the Swansons were dismissed on statute-of-limitations grounds pursuant to summary judgment, it does not appear that any additional material facts would have been produced, had the district court granted the motion. We conclude that the district court did not abuse its discretion by denying Isanti Pines's motion to compel.

**Affirmed.**